State, Hoboken Land and Improv't Co., Pros., v. Mayor, &c., of Hoboken.

THE STATE, THE HOBOKEN LAND AND IMPROVEMENT COMPANY, PROSECUTORS, v. THE MAYOR, &c., OF HOBOKEN.

1. The writ having been allowed after the work was completed, it is therefore dismissed, so far as it brings up the ordinance complained of.
2. It need not appear affirmatively that commissioners of assessment, who are permanent officers of the city, are freeholders resident in the city, as required by section fifty-two of the charter.
3. It must appear by the commissioners' report that they examined into the whole matter, and that they imposed the burdens in proportion to the benefits received.
4. Burdens in excess of the benefits cannot be imposed exclusively upon the land owners, subject to assessment. If the lands within the circle of benefits are not benefited as much as the improvement costs, the excess must be borne by general taxation.

On *certiorari.*

This *certiorari* brings up an ordinance passed by the common council of Hoboken, April 15th, 1869, to improve Eighth street, from the westerly line of Willow street to the foot of the hill, and the final assessment under it.

Argued at February Term, 1873, before Justice VAN SYCKEL.

For the plaintiffs, *J. Dixon, L. Abbett* and *C. Parker.*

For the defendants, *J. C. Besson.* .

The opinion of the court was delivered by

VAN SYCKEL, J. The work under this ordinance was completed in December, 1871, and the writ was not allowed until January, 1872. The prosecutors having permitted the work to be completed before they applied to this court for relief, the writ of *certiorari* must be dismissed, so far as it brings up for review the ordinance complained of. *Wilkin-*

*son et al.* v. *City of Trenton,* decided in Court of Errors, March Term, 1873.

The final assessment was confirmed January 9th, 1872, and if that is set aside, the charter of Hoboken imposes upon the Supreme Court the duty of appointing commissioners to make a new assessment.

1. The first objection taken to the validity of the assessment is that it does not appear that the commissioners who made it are freeholders resident in the said city, as required by section fifty-two of the charter.

By a supplement to the charter, passed April 6th, 1871, (section seventeen), the mayor and common council were authorized to appoint a board of commissioners, whose duty it was to make all assessments during their term of office.

This assessment was made by a board so appointed, who were permanent officers of the city, and not by commissioners appointed for a particular case.

It is not necessary to set forth the qualifications of officers of the corporation. *State* v. *Jersey City,* 4 *Dutcher* 504.

2. The fifty-second section of the charter provides that the commissioners shall examine into the whole matter, and shall determine and report in writing to the council what real estate ought to be assessed for such improvement, and what proportion of such expenses shall be assessed to each separate parcel or lot of land, and that the assessment shall be made upon and paid by the lands and real estate benefited by the improvement, in proportion to the benefit received.

This report is defective in two particulars: 1st. It does not state that the commissioners examined into the whole matter. 2d. They say that they have assessed the cost of the work "according to the provisions of the charter upon the property benefited by the same," but they do not certify nor show that they imposed the burden in proportion to the benefits received.

3. It appears by the testimony of each one of the commissioners, that they assessed all the real estate in the zone of the

assessment, to a greater extent than it was benefited by the improvement.

The charter directs that the assessment shall be laid upon the real estate benefited in proportion to the benefit received.

The work in this case having cost more than the benefit to be derived from it will be worth to the land owners who can be assessed, the question is presented, whether the cost in excess of the benefits can be imposed upon such land owners.

The legislature, in conferring this power to assess upon the city government, did not contemplate a case of this kind. The presumption was, that no undertaking would be entered upon which would not be remunerative in its results, and which would not confer benefits, at least co-extensive with its cost. In this case, it appearing beyond controversy that there is an excess of expenses over benefits, private property is taken *pro tanto* for public use, without compensation. That which is received by the land owner is not equal to what is taken from him. This excess of cost cannot, in the legitimate exercise of the power of taxation, be thrown exclusively upon the persons subject to assessment in this case. If there are no other lands to which the benefits reach, it is a burden which the public ought to bear, and it should be levied by general taxation. The legislative act confers upon the corporation no power to impose a burden on the property owner, in excess of the benefits accruing to him, and if it did, it would be unconstitutional and void.

This doctrine is so securely founded in reason and sound policy, and so firmly established in *The Tide Water Co.* v. *Coster*, 3 *C. E. Green* 527, that it cannot be shaken.

In the later case of *The State* v. *Fuller*, 5 *Vroom* 227, the Supreme Court sustained an assessment which was laid according to the number of lineal feet, but in that case no excess of cost over benefits was shown to exist, and the court presumed that there was none in fact. If there is any conflict between these cases, I should feel bound by the case in the court of last resort.

State, Hoboken Land and Improv't Co., Pros., v. Mayor, &c., of Hoboken.

This point is so ably presented and discussed in that case, that it is unnecessary to say more than that the conclusion reached by the Chief Justice should be strictly adhered to.

The argument that this case is exceptional because some of the relators petitioned to have the improvement made, and are therefore bound to pay whatever it may have cost, is not well founded. They petitioned to have the work executed in conformity to the city charter, and they cannot be subjected to any exaction more onerous than the charter authorizes.

The relators had no control over the cost of the undertaking, that was exclusively within the control of the city authorities, and it was their duty to count the cost before they granted the prayer of the petition, and entered into the engagement.

4. A further objection taken to this assessment is, that there is included in it the expense of earth filling on the adjacent lots, outside of the street lines.

The answer made by the defendants is, that the filling outside of the street was caused by the bulging necessarily incident to filling up the street to grade, and that no dirt was thrown outside of the limits of the highway.

So far as this is true, it is a good answer to the objection, but any filling unnecessarily, and not unavoidably made upon the adjacent lots, in the proper prosecution of the enterprise, is unauthorized and gratuitous, and cannot be charged upon the land owners.

The surveyor's estimate of the expense of the entire work, before it was entered upon, was $40,589.74, while the actual cost, as certified by him, was $123,193.21. This remarkable discrepancy certainly does no credit to his skill as an engineer, and may be looked into by the new commissioners to be appointed, whose duty it will be, under the act, to examine into the whole matter.

In my opinion, the entire assessment should be set aside, and a new assessment ordered.

CITED in *State, Harris, pros.,* v. *Jersey City,* 9 *Vr.* 85; *State, Grant, pros.,* v. *Clark,* 9 *Vr.* 102; *State, Spear, pros.,* v. *Perth Amboy,* 9 *Vr.* 425; *Green* v. *Jersey City,* 13 *Vr.* 118; *Bowne* v. *Logan,* 14 *Vr.* 421; *Rinehart* v. *Cowell,* 15 *Vr.* 360.